COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia

SCHWAB CONSTRUCTION
AND
CINCINNATI INSURANCE COMPANY                    OPINION BY
                                           JUDGE CHARLES H. DUFF
v.   Record No. 2561-96-4                       JUNE 24, 1997

BRET DUANE McCARTER

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           William E. Glover (Glover & Dahnk, on
           briefs), for appellants.

           Peter J. Jones for appellee.


     Schwab Construction and its insurer (collectively
"employer") contend the Workers' Compensation Commission
("commission") erred in finding that Bret Duane McCarter
("claimant") justifiably refused medical treatment directed by
Dr. Neil Kahanovitz.  Pursuant to Rule 5A:21(b), claimant
presents the additional question of whether the commission erred
in ordering him to select a new physician from a panel offered by
employer.

     "Following established principles, we review the evidence in
the light most favorable to the prevailing party." R.G. Moore
Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788
(1990).  "Factual findings of the commission that are supported
by credible evidence are conclusive and binding upon this Court
on appeal." Southern Iron Works, Inc. v. Wallace, 16 Va. App.
131, 134, 428 S.E.2d 32, 34 (1993).

Claimant sustained a compensable injury to his neck and back on November 6, 1992. He selected Dr. Donald MacNay as his primary treating physician on February 3, 1993. In approximately November 1994, claimant's attorney and employer agreed that Dr. Neil Kahanovitz would become claimant's new treating physician. Claimant, however, never considered Dr. Kahanovitz to be his treating physician and instead viewed him as a surgical consult.

Claimant saw Dr. Kahanovitz on three occasions: November 3, 1994, December 19, 1994, and March 16, 1995. On December 19, 1994, Dr. Kahanovitz advised claimant that he was not a candidate for surgery or physical therapy. On March 16, 1995, he provided claimant with the following "To Whom it May Concern" letter:

> Please be advised that Mr. Bret McCarter has been under my care since November 3, 1994. The patient was seen in my office today and upon evaluation Mr. McCarter does not need surgery. Since the patient lives in Manassas he should be referred back to Dr. Macmay [sic] for treatment of his chronic back pain. If you have any questions or concerns, feel free to call my office.

At that point, Dr. Kahanovitz considered himself to have released claimant from his care, and claimant considered Dr. MacNay to be his treating physician. Claimant subsequently saw Dr. MacNay on May 22, June 21, August 8, and September 9, 1995.

Claimant became concerned when employer made statements to him to the effect that he should be receiving detoxification treatment. Dr. Kahanovitz had never told claimant that he needed

such treatment.  On July 17, 1995, claimant called Dr. Kahanovitz for clarification.  During that conversation, claimant did not ask Dr. Kahanovitz for a referral to another treating physician.

Despite the March 16 letter of referral, Dr. Kahanovitz continued to maintain contact with employer.  On March 23, 1995, he advised the rehabilitation specialist retained by employer that claimant was a suitable candidate for a combined pain management and detoxification program offered through Prince William Hospital.  He advised employer's claims specialist John Crow on July 17, 1995, however, that claimant appeared to be accomplishing detoxification under the guidance of Dr. MacNay and no longer needed that treatment through Prince William Hospital.

Dr. Kahanovitz further advised Crow on July 17 that claimant was requesting a referral to another treating physician.  In fact, claimant was satisfied with Dr. MacNay and had not requested a referral.  On October 23, 1995, Dr. Kahanovitz again notified Crow that claimant should be offered a new treating physician.  He wrote that "unless Dr. MacNay has a specific detoxification program designed to eliminate all narcotic medications from the patient's treatment program, I would strongly recommend that someone else be picked from that [geographic] area."

On July 26, 1995, Crow directed claimant to choose a new treating physician from a panel of three to be offered by employer.  Claimant refused, asserting that he had been referred

3

back to Dr. MacNay by Dr. Kahanovitz on March 16, 1995, and, therefore, neither employer nor Dr. Kahanovitz could compel him to choose a new physician.  Employer responded by filing the application that is the source of this appeal.

Code § 65.2-603(B) provides for the suspension of benefits if a claimant unjustifiably refuses medical treatment.  "Once a physician is selected, it is well settled that an employee who is referred for additional medical services by the treating physician must accept the medical service or forfeit compensation for as long as the refusal persists."  Biafore v. Kitchin Equipment Co., 18 Va. App. 474, 479, 445 S.E.2d 496, 498 (1994).  In such a case, "[t]he question is not whether the recommended procedure was justified, but whether the patient's refusal to submit to it was justified.  The matter of justification must be considered from the viewpoint of the patient and in light of the information which was available to him."  Holland v. Virginia Bridge Structures, Inc., 10 Va. App. 660, 662, 394 S.E.2d 867, 868 (1990).

"Medical management of the employee is not to be directed by the employer.  An employer can require an employee to select an attending physician from its panel of three, but only an attending physician or the [Workers' Compensation] Commission may require an employee to see another physician."  Richmond Memorial Hospital v. Allen, 3 Va. App. 314, 318, 349 S.E.2d 419, 422 (1986).

4

The commission found that claimant reasonably believed that Dr. MacNay was his treating physician. That finding is supported by claimant's testimony and Dr. Kahanovitz's March 16, 1995 letter. Because that finding is supported by credible evidence, we will not disturb it on appeal. Accordingly, we find that claimant was justified in refusing to choose another physician despite Dr. Kahanovitz's recommendation. At the time that recommendation was made, neither employer nor Dr. Kahanovitz could compel claimant to change treating physicians.

We therefore hold that the commission did not err in finding that claimant reasonably believed Dr. MacNay was his treating physician. We further hold that claimant did not unjustifiably refuse employer's offer to choose a new physician. For these reasons, we affirm that portion of the commission's decision.

## II.

As an additional question raised pursuant to Rule 5A:21(b), claimant contends that the commission erred when it ordered him to select a new physician from a panel offered by employer after finding that he had not unjustifiably refused medical treatment. We agree with claimant and find that he was not afforded proper notice on this issue.

Employer's November 14, 1995, application for hearing asserted a change of condition based on claimant's unjustifiable refusal "to submit to medical care." In its letter in support of the application, employer cited claimant's refusal to select a

5

new treating physician as recommended by Dr. Kahanovitz. Employer contended the refusal was unjustified because Dr. Kahanovitz was claimant's primary treating physician. The only remedy sought by employer was termination of benefits. The commission's Notice of Hearing advised only that the subject of the hearing would be the application filed on November 14, 1995.

The deputy commissioner held that Dr. Kahanovitz was claimant's treating physician at the time the recommendation to change physicians was made. The deputy commissioner then concluded that claimant's refusal to do so was unjustified. The full commission reversed the deputy commissioner, finding that claimant reasonably believed that Dr. MacNay was his treating physician. Nevertheless, the commission ordered claimant to choose a new physician from a panel offered by employer "given the failure of Dr. MacNay's regimen to bring about improvement in the claimant's condition after several years of intensive treatment."

"Pleading requirements in administrative proceedings before the [Workers' Compensation] Commission are traditionally more informal than judicial proceedings." Sergio's Pizza v. Sconcini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986). "[R]igid or technical rules of pleading . . . shall not apply so long as the procedures adopted protect the substantial rights of the parties." Id. "The procedure utilized must afford the parties minimal due process safeguards." Id. "'An elementary and

6

fundamental requirement of due process in any proceeding which is to be accorded any finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.'" Oak Hill Nursing Home, Inc. v. Back, 221 Va. 411, 417, 270 S.E.2d 723, 726 (1980) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

In Sergio's Pizza, we held that an employer had not been afforded proper notice where the commission, on its own motion, modified the claimant's petition from that of a new occupational injury to a change in condition application. See Sergio's Pizza, 1 Va. App. at 375, 339 S.E.2d at 208. The claimant had sustained a compensable burn injury to her right hand on July 19, 1984. While hospitalized, she also complained of pain in her right elbow. After returning to work, the claimant filed an application for hearing regarding the elbow injury, citing August 29, 1984 as the date of injury. The commission initially regarded the August 29 claim as a new application for benefits and assigned it a separate file number. See id. at 373-74, 339 S.E.2d 206.

The deputy commissioner did not consolidate this new claim with that established following the July 19 injury and "defined the issue as being the determination of the employee's claim of 'occupational disease attributable to her employment with a communication date of August 29, 1984.'" Id. at 374, 339 S.E.2d

7

at 206. At the hearing "the record [did not] reflect that consideration would be or was given to the alternative position that [claimant's] 'tennis elbow' was a compensable aggravation, progression, or complication of the earlier burn injury." Id. The deputy commissioner ruled that the elbow injury was not an occupational disease related to the claimant's employment but expressly reserved judgment about whether it was a compensable aggravation, progression, or complication of the July 19 injury. See id. at 374-75, 339 S.E.2d at 206-07.

On appeal, the full commission amended the claimant's claim of a new injury to an application on a change of condition and ruled that the claimant's elbow condition was a compensable complication of the earlier burn injury. We reversed, holding the commission gave the employer inadequate notice that the matter might be considered as a change of condition application instead of an application on a new injury. See id. at 376, 339 S.E.2d at 208. The deputy commissioner had specifically framed the scope of the proceeding, and the evidence did not plainly put the employer on notice that the matter might be adjudicated as a change of condition. See id. Cf. Back, 221 Va. at 416, 270 S.E.2d at 726-27. We reasoned that "[e]ven if we assume that the medical evidence presented should have alerted the employer to the possibility of a connection, the procedure employed precluded an adequate opportunity to defend the claim since it was litigated only as an occupational disease." Sergio's Pizza, 1

8

Va. App. at 376, 339 S.E.2d at 208.

Here, claimant was put on notice that his refusal to change physicians was to be considered by the commission in the context of employer's charge of unjustified refusal of medical treatment. However, he was not adequately provided notice that the commission might, <u>sua</u> <u>sponte</u>, order him to change physicians if his refusal to do so when requested by the employer was justified. This was not a situation where the circumstances plainly put claimant on notice that this specific issue would be addressed. <u>See</u> <u>Back</u>, 221 Va. at 416, 270 S.E.2d at 726-27. Nor was this a situation where the commission merely redefined the issues but utilized the same facts and analysis as the deputy commissioner to reach the same result. <u>See</u> <u>Georgia Pacific Corp.</u> <u>v. Dancy</u>, 17 Va. App. 128, 132-33, 435 S.E.2d 898, 900-01 (1993). The commission also did not provide claimant an opportunity to present additional evidence to address its concerns regarding the efficacy of Dr. MacNay's treatment. <u>See</u> <u>Sergio's Pizza</u>, 1 Va. App. at 377, 339 S.E.2d at 208.

The only relief employer sought in its application was the termination of benefits. <u>See</u> Rules of the Workers' Compensation Commission 1.4(A) ("An employer's application for hearing shall be in writing and shall state the grounds <u>and the relief sought</u>." (Emphasis added.)) Employer could have, but did not, ask the commission in its application, in the alternative, to compel claimant to change physicians. <u>See</u> <u>Potts v. Mathieson Alkali</u>

9

<u>Works</u>, 165 Va. 196, 207, 181 S.E. 521, 525 (1935) ("No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed.").

The primary issue of contention for both parties was not the efficacy of Dr. MacNay's treatment but whether Dr. Kahanovitz was claimant's treating physician at the time the referral was made. The deputy commissioner made no specific ruling regarding the effectiveness of Dr. MacNay's treatment. Further, in an unjustified refusal of medical treatment case, the commission must undertake a different analysis than would be utilized if it were seeking to compel a change in physicians. The test employed in the former is a subjective one--whether the claimant acted reasonably in refusing the medical treatment. On the other hand, in determining whether the claimant should be ordered to change physicians, the commission focuses more upon objective factors.

We are cognizant of the language of Code § 65.2-603(B) which provides, in part, "[i]n any such case the Commission may order a change in the medical or hospital service or vocational rehabilitation services." We hold, however, that this language merely enables the commission to order a change in physicians as part of a remedy where the refusal is unjustified. The commission may not, unless the parties are given proper notice, compel a claimant to change physicians under this provision where it has not found an unjustified refusal of medical treatment.

10

Such an interpretation is especially appropriate where, as here, the primary defense against the allegation is collateral to the quality of treatment being afforded claimant by Dr. MacNay.

Accordingly, we hold that the commission erred in ordering claimant to select a physician from a panel offered by employer without first providing him an opportunity to defend against the change for the reasons found by the commission. Therefore, we reverse that portion of the commission's decision and remand for such further actions as the parties to the proceeding and the commission may elect.

<u>Affirmed in part,
reversed and remanded
in part.</u>